## Harley Meek, by Mattie Gerbaum, Appellee, v. Chicago Railways Company, Appellant.

## Gen. No. 18,034.

1. NEGLIGENCE, § 112*—*when negligence of driver of vehicle not imputable to occupant.* Where a boy riding on the tailboard of a wagon is injured by a street car colliding with the wagon, the negligence of the driver in turning across the street in violation of a city ordinance at the time of the accident, cannot be imputed to the boy, the relation of master and servant not existing between the boy and driver and the boy having no control over the driver.

2. DAMAGES, § 123*—*when not excessive.* Verdict for ten thousand dollars for injury to a leg, making it shorter than the other, *held* not excessive.

3. APPEAL AND ERROR, § 833*—*extension of time for filing bill of exceptions.* The court may, at a term subsequent to the judgment term, enter an order extending the time in which to file a bill of exceptions provided the order granting the extension was within the time originally given therefor.

4. APPEAL AND ERROR, § 839*—*when bill of exceptions not filed in apt time may not be stricken.* Where a bill of exceptions is presented to and signed by the trial judge within the time given for filing and the attorney negligently fails to file it within that time, it may be stricken from the files; but where the failure to file it within the proper time is not due to neglect but is due to circumstances over which he has no control, such as the unexpected closing of office of the clerk of court for a holiday, the trial court may order it to be filed *nunc pro tunc* as of the proper time.

5. APPEAL AND ERROR, § 839*—*when bill of exceptions may be filed.* The rule seems to be that if a bill of exceptions is filed within a reasonable time after it is signed it should not be stricken from the files.

6. APPEAL AND ERROR, § 1611*—*when declaration sufficient after verdict.* Declaration in an action for personal injuries, *held* sufficiently to negative contributory negligence of plaintiff so as to be sufficient after verdict to sustain judgment for plaintiff.

7. APPEAL AND ERROR, § 1016*—*when exception to ruling on instructions must be preserved in record.* Refusal of court to give requested instructions cannot be considered when no exception to such refusal is preserved in the record.

8. APPEAL AND ERROR, § 549*—*when objection to conduct of counsel preserved.* An objection to conduct of counsel in asking improper questions of witnesses is not, saved for review unless objection is made at the time and a ruling thereon is had or insisted upon.

9. APPEAL AND ERROR, § 551*—*necessity of exceptions.* Objection that court permitted appellee to exhibit the condition of his legs to the jury is not saved for review when no exception is taken to the action of the court.

10. MANDAMUS, § 24*—*when court may be compelled to make proper record of appeal.* Where exceptions were in fact taken to refusal of trial court to give instructions, trial court may be compelled by mandamus to cause the record to show such fact.

Appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Affirmed. Opinion filed November 21, 1913.

FRANK L. KRIETE and WILLIAM H. SYMMES, for appellant; JOHN R. GUILLIAMS, of counsel.

ROY D. KEEHN, for appellee.

MR. PRESIDING JUSTICE GRAVES delivered the opinion of the court.

On June 3, 1911, the same being during the May term of the Circuit Court for Cook County, appellee obtained a judgment in that court against appellant for ten thousand dollars for personal injuries. Appellant prayed an appeal and was given sixty days in which to file its bill of exceptions. On August 2, 1911, the time for filing the bill of exceptions was extended to August 15th. On August 12th it was extended to September 18th. On September 18th it was extended to September 25th. On September 25th it was extended to October 4th. On October 4th it was extended to October 9th, and on October 9th it was extended to October 12th. All of these orders were entered in term time, but none except that of June 3, 1911, were entered during the term at which the appeal was prayed and allowed. On October 11, 1911, in the afternoon, the bill of exceptions was presented to the trial judge and was signed by him. The office of the clerk of the Circuit Court was not open on October 12, 1911, that day being treated by the clerk and his office force as a holiday. Neither appellant nor its attorneys had any notice that the clerk's office would not be open on that day. The bill of exceptions was filed October 13, 1911. On December 14, 1911, by order of court, it was refiled *nunc pro tunc* as of October 12, 1911. A motion of appellee to strike from the files of this court the bill of exceptions was taken with the case. In support of this motion it is contended that the bill of exceptions is void, because it was not filed within the term at which final judgment was entered, or within a time fixed by an order of court entered at that term; because, even if it be held that the court had power to enter the various orders extending the time in which to file it, it was not filed within the time limited by the last order of extension; because the failure to file it within the limited time was not due to the inaction of the trial judge, but was due to the negligence of ap-

pellant; and because the order of December 14, 1911, directing the filing of it *nunc pro tunc* as of October 12, 1911, was void.

The first contention is based on the provisions of section 81 of the Practice Act, as amended by an act in force July 1, 1911 (J. & A. ¶ 8618.) While the argument of counsel is not very explicit on this point, it seems to be assumed that the language in the amendment, '' * * * at any time during the term of the court at which judgment was entered or within such time thereafter, as shall, *during such term,* be fixed by the court, any party desiring to prosecute a writ of error to or appeal from any such judgment, may submit to the court a stenographic report of the trial containing the evidence, and the rulings of the court upon all or any of the questions submitted to and ruled upon by the judge thereof, * * * '' applies to bills of exceptions and limits the time in which one may be filed, to the term at which judgment is entered, or within a time thereafter to be fixed by the court by an order entered at the judgment term, and in support of that contention cites the case of *Wurlitzer Co. v. Dickinson,* 247 Ill. 27, in which a somewhat similar provision found in the Municipal Court Act is construed to limit the power of the court in fixing the time for filing a ''stenographic report'' to that expressly given by the terms of that act.

It is not contended that the file which is mentioned in the motion to strike as ''a bill of exceptions,'' would not be a valid bill of exceptions, if it had been filed at the judgment term, or within some further time fixed by the court at that term.

Section 81 of the Practice Act (J. & A. ¶ 8618), so far as it relates to the matters here involved, as amended by the Laws of 1911, with the part added by the amendment in italics, is as follows:

*''If, during the progress of any trial in any civil or criminal cause, either party shall submit to the court any matter for a ruling thereon and the court shall rule*

*adversely to the party submitting the same, such ruling shall be deemed a matter for review in any court to which the same cause may be thereafter taken upon appeal or by writ of error without formal exception thereto, and after judgment, at any time during the term of the court at which judgment was entered or within such time thereafter as shall, during such term, be fixed by the court, any party desiring to prosecute a writ of error to or appeal from any such judgment, may submit to the court a stenographic report of the trial containing the evidence and the rulings of the court upon all or any of the questions submitted to and ruled upon by the judge thereof, and he shall examine the same, and, if correct, officially certify to the correctness of such report, and the same shall thereupon be filed in said court and become a part of the record in said cause, and all matters and things contained in such stenographic report shall become as effectually a part of said record as if duly certified in a formal bill or bills of exception, or* if, during the progress of any trial in any civil or criminal case, either party shall allege an exception to the opinion of the court, and reduce the same to writing, it shall be the duty of the judge to allow said exception and sign the same, and the said exception shall thereupon become a part of the record of such cause. A bill of exceptions, (or) certificate of evidence, *or report of trial* allowed ·in any cause shall be deemed sufficiently authenticated if signed by the judge of the court in which the cause was tried or by the presiding judge thereof, if more than one judge sat at the trial of the cause, without any seal of the court or judge annexed thereto. And in case the judge before whom the cause has heretofore been, or may hereafter be tried, is, by reason of death, sickness, or other disability, unable to hear and pass upon a motion for a new trial in a case at law, and allow and sign a bill of exceptions, (or) certificate of evidence *or report of trial,* then the judge who succeeds such trial judge, or any other judge of the court in which the cause was tried, holding such court thereafter, if the evidence in such case has been or is taken in stenographic notes, or if the said judge is satisfied

by any other means that he can pass upon such motion in a case at law, and allow a true bill of exceptions, (or) certificate of evidence, *or report of trial,* shall pass upon said motion, in a case at law, and allow and sign such bill of exceptions, (or) certificate of evidence *or report of trial;* and his ruling upon such motion in a case at law, and allowance and signing such bill of exceptions, (or) certificate of evidence, *or report of trial,* shall be as valid as if such ruling and allowance and signing had been made by the judge before whom such cause was tried; but in case said judge is satisfied that owing to the fact that he did not preside at the trial, or, for any other cause, he cannot fairly pass upon said motion in a case at law and allow and sign said bill of exceptions, (or) certificate of evidence, *or report of trial,* then he may, in his discretion, grant a new trial to the party moving therefor.''

The part shown in Roman letters is the old section as it existed before the amendment. The two parts are separated by the disjunctive ''or.'' The word ''or'' enclosed in parentheses and found in several places in the old section between the words ''bill of exceptions'' and the words ''certificate of evidence'' is omitted from the section as amended, and in each instance where the word ''or'' is so omitted in the amended section the words ''or report of trial'' follows the words certificate of evidence, so that in each case, where in the old section the words ''bill of exceptions or certificate of evidence'' is found, in the section as amended the words ''bill of exceptions, certificate of evidence *or report of trial''* appears. In the part of the Municipal Court Act under consideration in the *Wurlitzer Co.* case, *supra,* no provisions similar to the provisions in original section 81 of the Practice Act appear. That case has no bearing on section 81, except as to that part of it relating to a stenographic report of the trial.

A consideration of section 81, as amended and as it existed prior thereto, discloses no reason, and none has been suggested, for holding that by the amend-

ment it was intended to substitute a stenographic report for a bill of exceptions, but does disclose a manifest intention to provide two co-ordinate methods of preserving for review rulings on questions arising in common law courts. The first by means of a stenographic report of the trial and the second by means of a bill of exceptions, as theretofore. These two methods are as distinct from each other in every essential particular as language could well make them. The part of this amended section providing for bills of exceptions is the original provision without change. Section 2 of chapter 131, R. S., (J. & A. ¶ 11103), provides: "The provisions of any statute, so far as they are the same as those in prior statutes, shall be construed as a continuation of such prior provisions and not as a new enactment." See also Endlich on Interpretation of Statutes, page 515 (Ed. 1888); *Kirby v. Runals,* 140 Ill. 289; *Kelley v. Northern Trust Co.,* 190 Ill. 401; *McGann v. People,* 194 Ill. 526.

When the legislature re-enacted that part of original section 81 relating to bills of exemptions, it must be presumed they did so in the light of the judicial construction that had been given to it, and of the rights of litigants existing under it and regardless of it, as declared by the courts, as well as in the light of section 2 of chapter 131, above quoted.

In the case of *Haines v. Knowlton Danderine Co.,* 248 Ill. 259, the Supreme Court, in distinguishing the provisions of the Municipal Court Act relating to stenographic reports provided for in cases of the fourth class, and which that court had held in *Lassers v. North-German Lloyd Steamship Co.,* 244 Ill. 570, must be filed within thirty days from the date of the judgment, from the provisions of that act relating to bills of exceptions in cases of the first class, said:

"The claim is made on behalf of the appellant that the court may grant repeated extensions indefinitely after the expiration of such sixty days, provided, only, that the original extension shall have been granted

within such sixty days and the subsequent extensions within the limit of a prior extension and by an agreement of the parties. The bill of exceptions, which was before unknown, had its origin in the statute of Westminster 2, (13 Edw. 1, chap. 31,) which directed the justices to allow and put their seals to an exception when he that alleges the exception writes the same and requires them to do so. The statute did not appoint the time when the exception should be allowed and sealed, but the practice was, as the nature of the thing required, that the substance of the exception should be reduced to writing when taken, though it need not then be drawn up in form. (2 Tidd's Pr. 863.) By the statute of February 4, 1819, (which is now chapter 28 of the Revised Statutes,) this statute became a part of the law of Illinois. Section 19 of the act of January 29, 1827, concerning practice in courts of law, which with slight changes is the first sentence of section 81 of the present Practice Act, introduced no change, but is substantially the same as the statute of Westminster 2 and is declaratory of the law as it has existed since the State was organized. It seems never to have been regarded as necessary to reduce the bill of exceptions to form at the trial but it was sufficient if this was done during the term, though it was essential that the bill should show that the exception was alleged at the trial. (*Gibbons v. Johnson,* 3 Scam. 61; *Evans v. Fisher,* 5 Gilm. 453; *Burst v. Wayne,* 13 Ill. 664; *Walton v. United States,* 9 Wheat. 651; *Ex-parte Bradstreet,* 4 Pet. 102.) On account of the inconvenience or necessity of the case, the practice seems always to have obtained, in cases where the parties agreed or the court so ordered, to permit the bill of exceptions to be prepared and signed in vacation or at a subsequent term. (*Evans v. Fisher, supra; Burst v. Wayne, supra; Ex-parte Bradstreet, supra.*) This practice was not founded upon the statute but grew out of the action of the courts.''

By the language quoted the Supreme Court recognizes the settled rule to be that, while section 81 of the Practice Act, as it originally existed, was in force, the court had the right at a term subsequent to the

judgment term to enter an order extending the time in which to file a bill of exceptions, provided the order granting the extension was within the time originally given therefor. To the same effect are the holdings in *Pieser v. Minkota Milling Co.*, 222 Ill. 139; *Shults v. Shults*, 229 Ill. 420; and *Hill v. City of Chicago*, 218 Ill. 178. The orders of the trial court granting the various extensions were, therefore, properly entered. By successive proper orders of the trial court the time for filing the bill of exceptions was extended to and including October 12, 1911. It was presented to the trial judge and signed by him on the day before the expiration of the time given by the last order of extension. It was actually filed the day after the expiration of that time. By a subsequent order of court it was refiled *nunc pro tunc* as of the day when the time expired.

Where a bill of exceptions is presented to and signed by the trial judge within the time given for its filing and the attorney negligently fails to file it within that time, it does not become a part of the record, and should be stricken from the files. *Hall v. Royal Neighbors*, 231 Ill. 185. But where the failure to file it within the time is not due to such neglect, but is due to circumstances over which he has no control, it is the proper practice for the trial court to order it to be filed *nunc pro tunc* as of the proper time. *Hill Co. v. U. S. Guaranty Co.*, 250 Ill. 242. When the bill of exceptions in the case at bar was signed, it was turned over to the attorney for appellant. He then had all the following day in which to file it in the office of the clerk of the Circuit Court. He neither knew nor had reason to expect that on the following day, on which the time expired and which was a holiday only as to the maturing of commercial paper, the clerk's office would not be open. It has never been held, so far as we are aware, that it was necessary to file a bill of exceptions instantly after it is signed, or that a failure to do so was such negligence as would deprive a party

of the right to have it made a part of the record.    The rule seems to be that, if it is filed within a reasonable time after it is signed, it should not be stricken from the files.    In *Hill Co. v. U. S. Guaranty Co., supra,* the time for filing the bill of exceptions expired August 26th.    It was in fact signed and filed on and as of September 28th, more than thirty days after the time given had expired, and the court held that, while the proper practice would have been to obtain an order to file it, and file it *nunc pro tunc* as of the date it was presented to the judge, the failure to obtain such an order was a mere irregularity and did not render the bill of exceptions void.    The holding in that case was based, as we understand it, on the fact that it was not the fault of the party that the bill of exceptions was not filed in time.    We think the record in this case discloses that it was not the fault of appellant that the bill of exceptions was not filed in time.    The court was fully warranted in entering the order directing the filing of it as of October 12, 1911.    The motion of appellee to strike the bill of exceptions from the files is, therefore, denied.

Appellee was at the time of the occurrence here involved a lad of about sixteen years of age.    He was employed as a messenger boy for the Chicago Examiner.    He was on the south side of Madison street between Halsted and Union streets.    Union street extends north from Madison street, but does not extend south of it.    He had just executed an errand and started to return to the office of his employer which was about a mile due east.    He was not supplied with carfare and was supposed to walk.    A one-horse wagon with a tailboard that was down on a level with the bottom of the box approached from the west on the south side of Madison street.    As it passed appellee, he boarded it.    He seated himself on the tailboard facing west.    At that point on Madison street there are two street car tracks belonging to and operated by

appellant. The cars of appellant pass east on the south track and west on the north track. Before the wagon had reached the west side of Union street the driver turned his horse to the northeast and crossed the south or eastbound track, and was crossing the north or westbound track, but before his wagon had cleared the track a westbound car of appellant struck the right hind part of the wagon with sufficient force to throw appellee from it to the pavement. The bones of one of the legs of appellee were badly fractured. That leg is now about three inches shorter than the other one. An ordinance of the city of Chicago, introduced in evidence, prohibits drivers of vehicles from turning from the right hand side of the street on which they are driving into intersecting streets before reaching a point to the right of the center of such intersecting street.

It may be conceded for the purposes of this case that the act of the driver in turning across Madison street in violation of the provisions of the ordinances of the city was such negligence as would prevent him from recovering damages from appellant, if he had been injured by the collision. However that may be, the negligence of the driver could not be imputed to appellee under the facts in this case, for the reason that the relation of master and servant did not exist between the driver and appellee; neither did appellee have any control over or right to direct the driver as to where or how he should drive. *Buckler v. City of Newman*, 116 Ill. App. 546; *Chicago & A. R. Co. v. Vipond*, 212 Ill. 199; *Eckels v. Muttschall*, 230 Ill. 462; *Chicago Union Traction Co. v. Leach*, 215 Ill. 184; *Illinois Southern Ry. Co. v. Hamill*, 226 Ill. 88; *Dudley v. Peoria Ry. Co.*, 153 Ill. App. 619-621, 623. Expressions are sometimes found in opinions and textbooks to the effect that under certain circumstances the negligence of one will not be imputed to another, *unless that other is himself negligent.* Such expres-

sions are confusing. Of course, if one injured is himself negligent, and his negligence is the cause of the injury, he cannot recover, but that is because of his own negligence and not that of another imputed to him. It is also axiomatic that if the negligence of the driver of a rig in which one is riding is the sole cause of an injury to the passenger resulting from a collision with a street car, the passenger cannot recover against the street car company, not because the negligence of the driver is imputed to the passenger, but because the injury was not the result of the negligence of the street car company; but the negligence of the driver of a wagon will not prevent one injured while riding thereon from recovering against the street car company, if its negligence was an efficient cause of the injury. *Nonn v. Chicago City Ry. Co.*, 232 Ill. 378; *Chicago Union Traction Co. v. Leach*, 215 Ill. 184; *Springfield Consol. Ry. Co. v. Puntenny*, 200 Ill. 9; *Seith v. Commonwealth Electric Co.*, 241 Ill. 252-259.

There is evidence fairly tending to show that the driver of the wagon turned his horse in a northerly direction and started across the north or west bound track at a point some distance west of Union street; that when he did so the car of appellant that later collided with the wagon was some distance east of Union street; that there was nothing to prevent the motorman from seeing the rig as it came onto the north track, and that in fact he did see it and slackened the speed of the car, while he was yet east of Union street; that after the wagon had nearly cleared the north track he increased the speed of the car and maintained the increased speed until about the time it collided with the wagon. If this evidence was true it was sufficient to warrant a finding by the jury that the car was negligently operated and that such negligence was the cause of the injury. While this was contradicted by appellant's witnesses, it was for the jury to weigh the evidence and determine which story was true. In the exercise of that duty the jury evidently

believed appellee's evidence and disbelieved that offered by appellant, for they found it guilty. We have carefully scanned this record, and while a different verdict might well have been sustained, we are unable to say that the verdict returned is manifestly against the weight of evidence.

Whether appellee was guilty of contributory negligence was, as it usually is, a question of fact for the jury, and depended on whether in the mind of the jury, the evidence showed that he was at and just before the injury in the exercise of such care and caution for his own safety as an ordinarily careful and prudent person of his age, experience, capacity, knowledge, discretion and intelligence would exercise under the same or similar circumstances, and we are constrained to believe the verdict in that regard was fully warranted by the evidence.

When appellee's witness, Simmons, was on the stand, he was asked several questions on his direct examination as to the speed of the car that collided with the wagon on which appellee was riding. Appellant objected to all these questions and its objections were all sustained. On cross-examination he was asked if it was not a fact that it was much harder to judge of the speed of an object that was coming towards a person than if it was moving by. To this inquiry the court properly sustained an objection. It was not cross-examination.

Appellee's witness, Aerts, testified that when he first saw the car it was going at a "pretty good rate of speed," and when it struck the wagon it "seemed to have slowed up * * * it had slackened up some, not very much." On cross-examination he was asked, "Did you ever test the difference between the case of judging the speed of a moving object when it is passing by you and when it is coming toward you?" Objection to the question was sustained. The opinion of the witness as to the speed of the car had been based on his observation of it as it passed by him, and not as

it came towards him. The object of the cross-examination preceding the question to which objection was sustained was to show that one could judge less accurately of the speed of the car as it approached than as it passed. If the question had been answered in a way to sustain the theory of appellant, it would have strengthened rather than weakened the opinion evidence of the witness as to the speed of the car. If there was error in the ruling, it was not one of which appellant can complain.

While appellee was on the stand, his counsel said to him: "Just step down, if you will, and then stand up on your left leg—stand up straight and let the jury see where your left leg comes." Appellee then removed both his shoes, left the witness chair and stood before the jury. Appellant insists this was error for the reason that appellee "was thereby given an opportunity to simulate an injury which may not, in fact, have existed to the extent claimed." While the Court had just previous to the exhibition referred to announced that such a course would be a proper one, no exception was taken to such announcement, and the question is in no way preserved for review by this court.

Appellee's witness, Dr. Friend, was asked on direct examination, "What is your judgment as to the future, as to whether that condition of the limb—as to his being able to use it again?" The objection of appellant to this question was overruled, and it is insisted that this was error, because "the question assumes that plaintiff (appellee) was unable to use the leg, when as a matter of fact he was there and had been using it in the presence of the jury." We do not think the question is subject to the objection made, and even if it should be so construed, such an assumption could have done no harm, if, as the objection assumes, he was in fact there using the leg in the presence and plain view of the jury.

Complaint is made of the refusal of the court to

give several instructions asked by appellant. No exceptions to such refusal are preserved in the record. The correctness of the rulings of the court therein is, therefore, not presented for review. *Mayville v. French,* 246 Ill. 434. If exceptions were, in fact, taken, as appellant contends, the trial court could have been compelled by mandamus to cause the record to show the fact, but the Appellate Court has no power to settle the question on this appeal. On appeal this court can consider only such matters as the trial judge has certified occurred in that court.

Complaint is made by appellant of the conduct of counsel for appellee in many instances for asking conceivably improper questions of witnesses. To review each of the instances would serve no useful purpose. It is enough to say we have given each of them careful consideration and find that in some of them counsel for appellee was clearly within his rights. In others, no objection was made at the time by counsel for appellant. In others, objections were interposed, but no rulings were made by the court or insisted upon by appellant. In others, objections and rulings were made, but no exceptions to such rulings were preserved. In still others, the record shows objections and rulings were made and exceptions taken. In no instance, however, whether the point has been properly preserved for review or not, was there any such misconduct of counsel as, in our judgment, could have worked any mischief to the rights of appellant or affected the verdict.

It is contended that the verdict was excessive. While it was for a substantial amount, we do not think it was more than compensatory. It certainly was not so excessive as to warrant a finding that it was the result of passion, prejudice or other improper influence.

It is lastly contended that the declaration is not sufficient to sustain the verdict and judgment, because the language used in attempting to negative contributory negligence on the part of appellee was limited to the

time appellee was riding across the track, and did not include the time immediately before. Counsel cites *Krieger v. Aurora, E. & C. R. Co.*, 242 Ill. 544. In that case the Court was passing upon the sufficiency of the following instruction: "If you believe, from * * * the evidence, that the plaintiff has proved his case as laid in his declaration, then you will find the issues for the plaintiff."

By that means averments of the declaration were, in effect, incorporated in and made a part of the instruction. It has been frequently held that an instruction by which the doctrine of contributory negligence is defined is defective that does not require due care to be exercised by the injured party at and immediately before the injury. Applying that rule the court held that this instruction was bad, because neither in the instruction itself, nor the declaration referred to in it, due care immediately before the injury was mentioned. It is not there held that the declaration was insufficient after a verdict to sustain the judgment. In *Chicago City Ry. Co. v. Cooney*, 196 Ill. 466, and in *Baltimore & O. S. W. Ry. Co. v. Then*, 159 Ill. 535, declarations which contained no specific averment of due care on the part of the plaintiff were held sufficient after verdict. See also *Chicago, R. I. & P. Ry. Co. v. Clough*, 134 Ill., 586.

In *Jorgenson v. Johnson Chair Co.*, 169 Ill. 429; *Gerke v. Fancher*, 158 Ill. 375; and *Walters v. City of Ottawa*, 240 Ill. 259, the rule is announced that, in order to recover for personal injuries from negligence, the plaintiff must aver and prove that at the time of the injury he was in the exercise of due and ordinary care for his own safety. In discussing the apparent conflict in these two lines of cases the Supreme Court, in *Walters v. City of Ottawa, supra,* call attention to the fact that in the cases holding that a declaration that did not contain a specific averment of due care on the part of the plaintiff for his own safety was sufficient to sustain a verdict, there were averments of

facts from which such due care could be reasonably inferred, and hold that, while, without a specific averment of such due care, or averments of fact from which such due care can be reasonably inferred, a declaration does not state a cause of action and is not cured by a verdict, yet where such averments are made, although defectively, it is sufficient after a verdict. See also *Kelleher v. Chicago City Ry. Co.*, 256 Ill. 454.

The declaration in the case at bar with respect to the care exercised by appellee contains the averment "* * * while the plaintiff who was then and there a minor, was, with all due care and diligence, then and there riding in a certain wagon * * * ". No case has been cited and we believe none can be found holding that such an averment is even defective. It certainly was sufficient when issue was joined on it to put appellee to proof of the exercise by him of such due care and caution for his own safety, in regard to the circumstances under which he was injured, as would entitle him to a verdict, and was sufficient after a verdict to warrant a judgment thereon.

Finding no reversible error in the record, the judgment is affirmed.

*Judgment affirmed.*